FILED
CLERK'S OFFICE

**COMMONWEALTH OF MASSACHUSETTS**

PLYMOUTH, SS,　　　　　　　　　　　　　　　SUPERIOR COURT
　　　　　　　　　　　　　　　　　　　　　　Civil Action No. 05-0225

---

ERIC E. BEASLEY,
　　　　Plaintiff,

v.

WEARGUARD CORPORATION, INC.,
ARAMARK UNIFORM AND CAREER
APPAREL, INC. and JAY HESS, JR.
　　　　Defendants
　　　　　　　　　　　　　　　　　／

## COMPLAINT AND JURY DEMAND

### Preliminary Statement

1. This is an employment discrimination action under General Laws, Chapter 151B seeking compensatory and punitive damages against the defendants for race discrimination.

### Jurisdiction

2. This action is brought under Massachusetts General Laws, Chapter 151B, Section 9.

3. Plaintiff filed a timely complaint against the defendants with the Massachusetts Commission Against Discrimination (MCAD Docket No. 04-BEM-00202) and has met all administrative prerequisites for bringing this action.

### Venue

4. This action properly lies in this Court because the claims arose in

1

Plymouth County, where the plaintiff was employed by the defendants.

## Parties

5. Plaintiff, Eric E. Beasley ("Beasley"), is a Black adult male, who resides at 14 Roland Road, Weymouth, Plymouth County, Massachusetts.

6. Defendant, WearGuard Corporation ("WearGuard"), is a foreign corporation authorized to do business in Massachusetts with offices at Longwater Drive, Norwell, Plymouth County, Massachusetts.

7. Defendant, Aramark Uniform and Career Apparel, Inc. ("Aramark"), is a foreign corporation authorized to do business in Massachusetts with offices at Longwater Drive, Norwell, Plymouth County, Massachusetts.

8. Defendant, Jay Hess, Jr., ("Hess") was the Manager of Corporate Security for the defendant Aramark at all times relevant to this action.

## Facts

9. WearGuard and Aramark operated a business employing 25 or more employees at Longwater Drive, Norwell, Massachusetts at all times relevant to this action.

10. Beasley was employed by WearGuard and Aramark as a machine operator and a digitizer in Norwell from March 22, 1999 until November 17, 2003.

11. Beasley was paid an hourly wage of $13.75 by WearGuard and Aramark.

12. During his employment with WearGuard and Aramark, Beasley's work performance was satisfactory at all times.

13. On or about November 5, 2003, while working on the 2 p.m. to

midnight shift, Beasley was called into a conference room at about 9:00 p.m. to meet Hess.

14. Hess told Beasley he was conducting an investigation.

15. During the meeting, Hess accused Beasley of selling drugs at work.

16. When Beasley denied the accusation, Hess said: "Oh, come on, I know your kind loves to sell drugs."

17. The words "your kind" used by Hess and directed to Beasley, a Black man, was an unmistakable racial slur.

18. Hess also advised Beasley "to resign before we get you, because we will get you."

19. At the conclusion of the meeting, Beasley returned to work.

20. On or about November 6, 2003, when Beasley reported to work at about 2 p.m., he was called to a meeting with John Cummings ("Cummings"), Director of Security, and Kathy Gillis ("Gillis"), Director of Human Resources, in a conference room.

21. Cummings and Gillis asked Beasley what he knew about an investigation of drug use and theft at work.

22. When Beasley denied knowledge or involvement in drug use or theft at work, Gillis said she did not believe him.

23. Gillis then told Beasley he was suspended indefinitely without pay and directed him to leave the premises immediately

24. Beasley then told Cummings and Gillis he was offended by the accusations and would be humiliated to return to work after such false charges.

25. Gillis then replied: "You don't have to worry; you probably won't be back."

26. On or about November 17, 2003, at about 5 p.m., Beasley received a telephone call at home from Gail O'Connor ("O'Connor"), a WearGuard employee.

27. O'Connor told Beasley that Gillis had asked her to call to tell Beasley he was terminated from employment effective from the day of his suspension.

28. When Beasley asked O'Connor the reason for his termination, O'Connor replied it was for failure to abide by Company policy.

29. When Beasley asked O'Connor what policy he failed to abide by, O'Connor said she could not tell him.

## COUNT I

(Violation of Chapter 151B, Sec. 4(1) against WearGuard)

30. Beasley hereby incorporates, as if re-alleged, paragraphs 1 through 29 above.

31. By and through the conduct of its agents Hess, Cumming, Gillis and O'Connor, WearGuard engaged in race discrimination in violation of Chapter 151B, Section 4 (1).

## COUNT II

(Violation of Chapter 151B, Sec. 4(1) against Aramark)

32. Beasley hereby incorporates, as if re-alleged, paragraphs 1 through 31 above.

33. By and through the conduct of its agents, Hess, Cummings, Gillis

4

and O'Connor, Aramark engaged in race discrimination in violation of Chapter 151B, Section 4 (1).

## COUNT III

### (Violation of Chapter 151B, Section 4 (4A) against Hess)

34. Beasley hereby incorporates, as if re-alleged, paragraphs 1 through 33 above.

35. By his conduct toward Beasley, Hess coerced and intimidated Beasley in the exercise or enjoyment of his rights under Chapter 151B and thereby Hess violated Section 4 (4A) thereof.

## COUNT IV

### (Violation of Chapter 151B, Section 4 (5) against Hess)

36. Beasley hereby incorporates, as if re-alleged, paragraphs 1 through 34 above.

37. By his conduct toward Beasley, Hess aided and abetted WearGuard and Aramark in violating Chapter 151B and thereby Hess violated Section 4 (5) thereof.

### Prayer For Relief

38. Wherefore, Beasley, prays that this Court:

(a) declare the conduct of WearGuard, Aramark and Hess to be in violation of the Beasley's rights under Chapter 151B;

(b) award Beasley the following damages:

    (i) lost wages and employee benefits

    (ii) damages for emotional distress;


(iii)   punitive damages

(iv)   award Beasley his costs and attorney's fees; and

(v)   grant such other relief as the Court may deem just.

### Jury Demand

39.   Beasley demands a jury to try all claims triable by a jury.

Respectfully submitted,

ERIC E. BEASLEY

By his attorney,

*/s/ Kevin B. Callanan*
Kevin B. Callanan, BBO #070620
Law Office of Kevin B. Callanan
17 Accord Park Drive, Suite 101
Norwell, Massachusetts 02061
781-878-1604

Dated:   February 24, 2005

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts Superior Court Department County: Plymouth |
|---|---|---|
| PLAINTIFF(S) Eric E. Beasley | | DEFENDANT(S) Wearguard Corporation Inc., Aramark Uniform and Career Apparel, IN and Jay Hess, Jr. |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Kevin B. Callanan  781-878-1604 17 Accord Park Drive - Ste 101 Norwell, MA 02061 Board of Bar Overseers number: #070620 | | ATTORNEY (if known)  617-951-2254 Timothy P. Van Dyck Edwards & Angell 101 Federal St., Boston, MA 02110 |

**Origin code and track designation**

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION** (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B22 | Employment Discrimination | (F) | (X) Yes  ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ............................................. $............
  2. Total Doctor expenses .............................................. $............
  3. Total chiropractic expenses ........................................ $............
  4. Total physical therapy expenses .................................... $............
  5. Total other expenses (describe) .................................... $............
    Subtotal $............
B. Documented lost wages and compensation to date ...................... approx $ 15,000.00
C. Documented property damages to date ................................. $............
D. Reasonably anticipated future medical and hospital expenses ......... $............
E. Reasonably anticipated lost wages ................................... $............
F. Other documented items of damages (describe)
   emotional distress, attorney's fees & costs                          approx $ 125,000.00
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$............
TOTAL $ 140,000.00

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _/s/ Kevin B. Callanan_       DATE: 02-24-05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000