UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC E. BEASLEY,<br><br>　　　Plaintiff,<br><br>v.<br><br>ARAMARK UNIFORM AND CAREER APPAREL, INC., and JAY HESS, JR.,<br><br>　　　Defendants | Civil Action No. 05-CV-10496-NMG |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' ASSENTED-TO MOTION TO UTILIZE GENERAL GRANT OF ACCESS TO CRIMINAL OFFENDER RECORD INFORMATION TO ATTORNEYS OF RECORD**

The Plaintiff, Eric E. Beasley ("Mr. Beasley"), has alleged that the Defendants, ARAMARK Uniform and Career Apparel, Inc. ("ARAMARK") and Jay Hess, Jr. ("Mr. Hess"), discriminated against him on the basis of his race. In November 2003, as the result of a sting operation, ARAMARK discharged eleven employees who were implicated in using or selling illegal drugs on ARAMARK's premises. Mr. Beasley was one of those employees. Mr. Beasley denies that he was using or selling drugs, and contends that he was selected for termination based on an unlawful discriminatory animus.

Defendants seek to obtain information about Mr. Beasley's criminal history to use for impeachment and trial strategy purposes. Federal Rule of Evidence 609 provides that a wide range of prior convictions are admissible to impeach the credibility of a witness. See Fed. R. Evid. 609(a), (b).[1]  Magistrate Bowler has observed that "[p]rior convictions are admissible under Fed.R.Evid. 609 to impeach any witness, including plaintiffs testifying on their own behalf." Schuurman v. Town of North Reading, 139 F.R.D. 276, 277 (D. Mass. 1991).

---

[1]　Massachusetts follows a similar rule in its state courts. See M.G.L. c. 233, § 21.

Furthermore, "[d]iscovery of the plaintiffs' probation records is therefore reasonably calculated to uncover admissible evidence. Objections to the tendency of this evidence to prejudice or confuse the jury are properly brought at trial, not during discovery." Id.

As with any plaintiff, Mr. Beasley's credibility will be a central issue if this matter is not resolved on summary judgment and goes to trial. Particularly given the nature of the allegations in this case and Mr. Beasley's denial that he was involved in illegal activity, there may be significant impeachment value in his criminal history. Furthermore, information about Mr. Beasley's criminal background may lead Defendants to additional discoverable information that could be used to further impeach Mr. Beasley, or to other witnesses who may provide useful information. Finally, evidence that Mr. Beasley has a criminal record may implicate the after-acquired evidence doctrine, significantly limiting the remedies potentially available to Mr. Beasley. See McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 361-62 (1995) (where employer discovers, after termination, that employee engaged in other misconduct for which he would have been terminated, employee is not allowed to recover economic damages from the point at which the misconduct is discovered, and court may cut off earlier recovery, as well).

Massachusetts has established a Criminal History Systems Board ("CHSB") to oversee the dissemination of Criminal Offender Record Information ("CORI"). Among the "grants of authority" issued by the CHSB to allow access to CORI is a grant to attorneys of record for purposes of witness impeachment or trial strategy. See Schuurman, 139 F.R.D. at 278.[2] In order to obtain CORI information under this provision, counsel of record is required to obtain an order from the trial court authorizing counsel to utilize the grant of authority. Id. See Estate of Strong v. American Drug Stores Inc., 2002 WL 221028 (Mass. Super. Ct. Feb. 6, 2002) (Agnes, J.)

---

[2] A page from the CHSB website listing this grant of authority is attached as Exhibit A.

(approving defendant's request to access plaintiff's CORI for impeachment and trial strategy purposes).³

As set forth above, information about Mr. Beasley's criminal history is discoverable, as it is both relevant and reasonably calculated to lead to the discovery of admissible evidence. To the extent Mr. Beasley may have any privacy concerns, those concerns are unfounded, given that (a) the CORI statute strictly limits the dissemination of CORI records, see M.G.L. c. 6, §§ 172, 177, 178; (b) the parties have voluntarily entered into a confidentiality agreement (a copy of which is attached as Exhibit C); and (c) Defendants do not intend to use Mr. Beasley's CORI information for purposes other than impeachment and trial strategy in this case, see Affidavit of Brian H. Lamkin, submitted herewith.

For the reasons set forth above, therefore, Defendants respectfully request that the Court allow their Motion to Utilize General Grant of Access to Criminal Offender Record Information to Attorneys of Record, and endorse the Proposed Order submitted herewith.

> ARAMARK UNIFORM AND CAREER APPAREL, INC., and JAY HESS, JR.,
> Defendants,
> By their attorneys,
>
> /s/ Brian H. Lamkin
> Timothy P. Van Dyck (BBO No. 548347)
> Brian H. Lamkin (BBO No. 635688)
> EDWARDS & ANGELL, LLP
> 101 Federal Street
> Boston, MA  02110
> (617) 439-4444
> (617) 439-4170 (fax)

---

³ A copy of the Strong case is attached for the Court's convenience as Exhibit B.

## *GRANTS CONCERNING THE ELDERLY AND DISABLED*

### Agencies Providing Transportation to Children, Elders, Disabled Persons and Other Vulnerable Populations

Transportation companies may receive CORI pertaining to conviction and pending criminal case data for the purpose of screening current and otherwise qualified prospective drivers and monitors who have the potential for unmonitored access to children, elders, disabled persons and other vulnerable populations.

### Elderly and Disabled in a Home or a Community Based Setting

Pursuant to M.G.L. c. 6, § 172C (*Chapter 444, Acts of 1997*), it is mandated that CORI shall be available to entities, including, but not limited to, home care corporations, municipalities, or any other entity receiving federal, state, or local funds, which employ, accept as a volunteer or refer for employment to a client, any individual who will provide care, treatment, education, training, transportation, delivery of meals, instruction, counseling, supervision, recreation or other services in a home or community based setting, for any elderly person or disabled person or who will have any direct or indirect contact with such elderly or disabled persons or access to such persons' files.

### Elderly Foster Care

Adult Foster Care Programs may access and receive conviction and pending case CORI from the Criminal History Systems Board for the purpose of screening current or otherwise qualified prospective employees or volunteers who will have the opportunity for unmonitored contact with clients.

### Long Term Health Care Facilities

Pursuant to M.G.L. c. 6, § 172E (*Chapter 336 of the Acts of 1998*), CORI shall be available to any long term care facility, for the purpose of screening applicants under final consideration for, or an individual currently employed in, a position that involves the provision of direct care or treatment to residents of such facility.

### R.S.V.P. – Retired and Senior Volunteer Programs

R.S.V.P. chapters may access and receive conviction and pending case CORI from the Criminal History Systems Board for the purpose of screening current or otherwise qualified prospective employees or volunteers who may have direct and unmonitored contacts with children, the disabled or elderly.

### Unmonitored Access to Elders

Agencies providing elder care services may receive CORI pertaining to conviction and pending criminal case data for the purpose of screening current and otherwise qualified prospective employees and volunteers who have the potential for unmonitored access to elders.

## *GRANTS CONCERNING CRIMINAL JUSTICE AND COURT RELATED ACTIVITY*

### Attorney of Record Certification

Attorneys of record may receive CORI in civil litigation, administrative hearings, and criminal cases for witness impeachment or trial strategy purposes. This general grant of access requires an approved motion from the court.

### Campus Police Departments

Campus Police Departments whose officers are considered Special State Police Officers may receive CORI to the extent necessary for the performance of criminal justice duties.



Not Reported in N.E.2d                                                                                                                Page 1

Not Reported in N.E.2d, 14 Mass.L.Rptr. 353, 2002 WL 221028 (Mass.Super.)

**(Cite as: 2002 WL 221028 (Mass.Super.))**

C<br>
Superior Court of Massachusetts.<br>
ESTATE OF Kendall STRONG, Jr., Plaintiff,<br>
v.<br>
AMERICAN DRUG STORES INC., d/b/a Osco Drug, et al., Defendants.<br>
**No. CIV. A. 01-0851.**

Feb. 6, 2002.

MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO INSPECT PROBATION RECORDS

PETER W. AGNES, JR., Justice.

*1 This is a civil action in which the plaintiff alleges that the decedent, Kendall Strong Jr., died as a result of the drugs he consumed in February, 1998, and that the drugs were obtained by means of a prescription that was altered by Angela Strong. Angela Strong is expected to be a witness at trial and her credibility is regarded by the defendant as critical to the outcome of the case. The defendant Osco Drug (Osco) has indicated that it wishes to have the opportunity to impeach the credibility of Angela Strong by using prior criminal conviction in accordance with G.L. c. 233, § 21. For this reason, Osco filed a motion requesting the court to order the Commissioner of Probation to supply the defendant's counsel with information about convictions involving Ms. Strong. Osco's motion is accompanied by a proposed order directing "[a]ny state agency possessing criminal Offender or Probation Record Information concerning Angela Strong (dob 4/26/71)" to release it to defendant's counsel or appointed agent. [FN1] The Motion is also accompanied by an affidavit of counsel in which she states that she is counsel of record, requests "CORI" [FN2] on prospective witnesses only; will use the information "for trial strategy or trial witness impeachment purposes only," and agrees not to make any disclosure of CORI to unauthorized persons.

FN1. There is no authority to support an order directed to "any state agency." As noted infra, the agencies charged with the responsibility for dissemination of criminal history information are the Criminal History Systems Board and the Commissioner of Probation.

FN2. CORI (Criminal Offender Record Information) is a specific category of criminal history information that is defined by statute and by regulation. See G.L. c. 6, § 167; 803 C.M.R. § 2:03. Essentially, CORI includes the data gathered about a named adult individual with reference to a particular criminal charge from the time of arrest to the time of final disposition. It does not include evaluative information or intelligence information which are separately defined and regulated. It should be noted that the CHSB actually receives the information contained in its CORI files on a daily basis in an electronic form from the Commissioner of Probation.

DISCUSSION

Osco's motion raises the question of what procedure should be followed by counsel in civil cases who seek to discover whether a prospective witness has a prior criminal history that might give rise to an opportunity to impeach the credibility of the witness at trial under G.L. c. 233, § 21. Such records are generally discoverable because they are reasonably calculated to lead to the discovery of admissible evidence. *See Frederick v. Canal Electric Company,* 1995 WL 1146178 (Mass.Super.)(1995)(White, J.), *discussing Schuurman v. Town of North Reading,* 139 F.R.D. 276 (D .Mass.1991). In particular, should counsel seek an order that is directed to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d    Page 2

Not Reported in N.E.2d, 14 Mass.L.Rptr. 353, 2002 WL 221028 (Mass.Super.)

**(Cite as: 2002 WL 221028 (Mass.Super.))**

Commissioner of Probation or to the Criminal History Systems Board?

It appears that there are two choices open to counsel. First, counsel may file a motion and request a court order that the Commissioner of Probation supply to counsel the record of convictions for a party or prospective witness in a case in order to determine whether there is a prior criminal conviction that could be used for impeachment purposes under G.L. c. 233, § 21. However, in addition to complying with the procedure outlined in Superior Court Rule 9A for the filing of motions, counsel who chooses this option must also comply with the requirements of the Uniform Rules on Subpoenas to Court Officials, Trial Court Standing Order IX (1992). Under Uniform Rule 3(2), a party seeking access to records compiled or maintained by the Commissioner of probation must file a motion for the same and serve the Commissioner with a copy. Uniform Rule 3(3) also requires that the order that a court may issue to the Commissioner of Probation on behalf of a party seeking access should contain sufficient identifiers for the person whose record is sought, direct the keeper of the records to provide attested copies, and should "specifically limit the party's use of the attested copies of such records and the information contained therein to the purpose(s) for which access was granted." An order for records directed to the Commissioner of Probation will yield "the Court Activity Record Information (CARI) contained in the Probation Central File." Uniform Rule 3(3)*. In such a case, the attorney in a civil or criminal case who wishes to use the information for impeachment purposes will still be required to obtain a certified copy of the conviction from the particular court in which the conviction took place. [FN3] *See, e.g., Commonwealth v. Saunders,* 435 Mass.691 (2002)(Explaining the requirements of G.L. c. 233, § 21 regarding the admissibility of prior criminal convictions; in most cases there is no longer any need to obtain certified copy of the appearance of counsel).

> FN3. Counsel should not be required to obtain a further judicial order to secure the record of conviction for a named individual from a particular court because the Supreme Judicial Court has held that such information is a public record. *See Roe v. Attorney General,* 434 Mass. 418 (2001), *discussing Globe Newspaper Co. v. Fenton,* 819 F.Supp. 89 (D.Mass.1993).

*2 The second choice open to counsel is to file a motion requesting a court order directing the Criminal History Systems Board (CHSB) to supply Criminal Offender Record Information for a particular purpose. See G.L. c. 6, § 172. *See generally Bellin v. Kelley,* 435 Mass. 261 (2001), *affirming* 48 Mass.App.Ct. 573 (2000). In accordance with its statutory and regulatory authority, see 803 C.M.R. § 3.04, CHSB has established a General Grant of access for such information known as the "Attorney of Record Certification." This authorization provides that "[a]ttorneys of record may receive CORI in civil litigation for witness impeachment or trial strategy purposes. This general grant of access requires an approved motion from the court." [FN4] Thus, if an attorney of record in a civil case files a motion under Superior Court Rule 9A seeking an order directing CHSB to release CORI "for witness impeachment or trial strategy purposes" it will be granted without the need to serve anyone else. Of course, the attorney will still be required to obtain a certified copy of any specific criminal conviction and an appearance of counsel in order to use the data for impeachment purposes.

> FN4. This General Grant is included in the Home Page for the Criminal History Systems Board located on the World Wide Web. See *www.state.ma.us/chsb.* This grant of access has existed since 1978. *See Schuurman v. Town of North Reading,* **139 F.R.D. 276, 278 (D.Mass.1991).**

While there is no requirement that an attorney initiate a request for criminal history information for a party or prospective witness with a motion directed to either the Commissioner of Probation or CHSB, it makes more sense to seek relief in the first instance from CHSB. One of the principal missions of CHSB is to establish whether and the terms and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                                    Page 3
Not Reported in N.E.2d, 14 Mass.L.Rptr. 353, 2002 WL 221028 (Mass.Super.)
**(Cite as: 2002 WL 221028 (Mass.Super.))**

conditions under which persons and institutions other than criminal justice agencies (which have a broad right of access to CORI) should be authorized to receive CORI. See G.L. c. 6, § 168. CHSB is organized to respond to thousands of requests each year from individuals and organizations seeking access to CORI.. Furthermore, CHSB is specifically charged with the responsibility for monitoring the use of CORI, responding to complaints about improper uses of CORI, and to enforce compliance with the terms of the release of CORI. Violations of the applicable laws and regulations pertaining to the CHSB may be enjoined in a civil proceeding, G.L. c. 6, § 177, or punished criminally. G.L. c. 6, § 178. The Office of the Commissioner of Probation, on the other hand, exists principally to oversee the supervision of criminal offenders, and to serve the information needs of judges, other court personnel, and lawyers in criminal cases. Counsel who seek orders directed to the Commissioner of Probation may invite additional litigation. If the information sought is exclusively to impeach a witness, access should be limited to records of convictions that qualify for use under G.L. c. 233, § 21. Typically, the systems used by the Probation Department are not designed to segregate CARI material into admissible convictions and all other material (e.g., a dismissal, a not guilty, a case ended by a nolle prosequi). If, under Uniform Rule 3, *supra,* the Commissioner is obliged to restrict access to the purposes for which records are sought, the Commissioner's office could be forced to exclude certain information from CARI material it otherwise has collected on an individual and thus be put to an added burden and expense. [FN5] Thus, attorneys are advised to seek access to criminal history information about parties or prospective witnesses in civil cases by motion for an order directed to the CHSB.

> FN5. This does not present a problem for the CHSB because it has authorized attorneys to obtain criminal history information for reasons other than simply impeachment under G.L. c. 233, § 21 ("trial strategy purposes").

ORDER

*3 For the above reasons, the court orders the Criminal History Systems Board to supply counsel of record, attorney Jeanne M. Harvey, with Criminal Offender Record Information relating to Ms. Angela Strong (dob 4/26/71) which may be used for witness impeachment or trial strategy purposes.

Not Reported in N.E.2d, 14 Mass.L.Rptr. 353, 2002 WL 221028 (Mass.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ERIC E. BEASLEY,

    Plaintiff,

v.

ARAMARK UNIFORM AND CAREER APPAREL, INC., and JAY HESS, JR.,

    Defendants

Civil Action No. 05-cv-10496-NMG

## CONFIDENTIALITY AGREEMENT

The parties hereto, through their respective counsel, stipulate and agree as follows as of this 6th day of September, 2005:

1.     The term "Confidential Material" as used herein shall mean all documents, information, articles, testimony or things ("discovery material") designated as such by any party hereto (hereinafter, a "party" or the "parties").

2.     Confidential Material shall be used only for the purposes of the above-captioned action (including any appeals) and not for any business or other purposes. Confidential Material shall not be given, shown, made available, disclosed, or communicated in any way except to those persons designated herein.

3.     Confidential Material may be disclosed only to the following persons and to no others, including without limitation government agencies or investigating bodies except pursuant to lawful process, reasonable advance notice of which is to be provided to the party designating such material as confidential:

(a) The attorneys working on this action on behalf of any party, including in-house counsel, and all paralegal assistants, stenographic and clerical employees working under the direct supervision of such attorneys;

(b) Any individual party and any director, officer or employee of a party or any independent expert retained by such party who is required by such party to work on this litigation. Disclosure of Confidential Material to such persons will be made only to the extent necessary to perform such work;

(c) Any witness at deposition or trial who is a party or a present employee of one of the parties may be shown Confidential Material of that party in connection with his or her testimony;

(d) Any witness at deposition or trial who is a former employee or consultant of one of the parties may be shown Confidential Material of that party which pertains to the subject matter of his or her employment or consultation, or to the subject matter of his or her communications with that party, in connection with his or her testimony; and

(e) Persons or entities noticed for depositions or designated as trial witnesses and their counsel to the extent reasonably and in good faith deemed necessary by counsel for any of the parties to prepare adequately such deponents and/or witnesses to testify.

4. The persons described in subparagraphs (b) through (e) of paragraph 3, other than individual parties and directors, officers, or employees of a party, shall have access to the Confidential Material only after they have been made aware of the provisions of this Confidentiality Agreement and have agreed to be bound by it.

5. The parties shall designate Confidential Material as follows:

   (a) In the case of documents, designation shall be made by placing the following legend on each page of any such document prior to production: "CONFIDENTIAL."

   (b) In the case of electronic media, such as CD-ROMs, a party may designate the entire contents of the media as Confidential Material by placing the legend "CONFIDENTIAL" on the media itself, or by notifying opposing counsel that the files contained on the electronic media are designated as Confidential Material.

   (c) In the case of interrogatory answers, designation shall be made by placing the following legend on each page of each individual answer designated as Confidential Material: "CONFIDENTIAL."

   (d) In the case of depositions, designation shall be made by advising the reporter of the designation. The reporter shall designate the portion of the transcript (including exhibits) which contains Confidential Material by placing the legend "CONFIDENTIAL" on each of the pages of the transcript containing such material and shall mark the face of the transcript indicating that Confidential Material is contained therein.

6. To the extent that any party wishes to file Confidential Material with the Court, that party shall make reasonable efforts to have such Confidential Material filed under seal.

7. To the extent that any discovery material has been produced by any party prior to this Agreement, the party producing such material may retroactively designate such material as Confidential Material by placing the appropriate legend on such material and providing such material bearing such legends to the other party. Any documents already produced which already bear such a legend shall be deemed produced pursuant to this Agreement.

BOS_BOS_502483_1/BLAMKIN

8. No party concedes that any information designated by any other person or party as Confidential Material does in fact contain or reflect confidential information, or has been properly so designated. A party shall not be obliged to challenge the propriety of the designation of information as confidential at the time made, and failure to do so shall not preclude a subsequent challenge thereof. Any party may object to any such designations as follows:

(a) A party objecting to the designation of information as Confidential Material must so notify counsel for the producing party in writing within a reasonable time or as otherwise agreed by counsel for the parties;

(b) Within twenty (20) days of receipt of such notice of objection, counsel for the party seeking confidential treatment shall respond in writing to any such notification by either: (i) withdrawing such designation; or (ii) stating that it refuses to do so and the reasons for its refusal;

(c) If no response to the notice of objection is received by the objecting party within twenty (20) days of the receipt of such notice, the protection of this Agreement shall be deemed waived as to the Confidential Material objected to;

(d) If the objection cannot expeditiously and informally be resolved, the party challenging the designation of such information as Confidential Material shall within twenty (20) days after receipt of the written response, apply for an appropriate ruling from the Court determining whether cause has been shown for a particularized need for confidential treatment. The designated information at issue shall continue to be treated as Confidential Material unless and until the Court orders otherwise; and

(e) If, after delivery of written refusal to remove such classification under subparagraph (b), no application is timely filed with the Court under subparagraph (d), the information shall be deemed properly designated as Confidential Material.

9. In the event that Confidential Material is used in any court proceeding herein, it shall not lose its Confidential Material status through such use, and the parties shall take all steps reasonably required to protect its confidentiality during such use.

10. Within sixty (60) days after the termination of any and all litigation between the parties, including the final disposition of any and all appeals, each party shall return all Confidential Material and all copies thereof to the party which produced it or shall confirm in writing to the producing party that all such documents have been destroyed, except that counsel shall be permitted to retain copies of court papers, transcripts and attorney work product, which shall remain subject to this Confidentiality Agreement.

11. By this Agreement, no person waives any right it may have to object to any or all discovery requests on any applicable grounds or to object to the admission on any applicable grounds of any discovery materials as evidence at any trial or hearing. In any proceeding concerning the confidential and proprietary nature of discovery material a party is seeking to protect from disclosure, the parties shall not use production under this Agreement by such party as proof that such discovery material is not confidential or proprietary.

12. The provisions of this Agreement may be modified or supplemented by agreement of the parties hereto only in writing or by subsequent order of the Court. Absent written permission of the party disclosing the Confidential Material or further order of the Court, the provisions of this Agreement shall continue to be binding after the conclusion of this action.

13. Nothing in this Agreement shall prevent or otherwise restrict any counsel from rendering advice to his or her client and, in the course thereof, relying on his or her examination of documents designated as Confidential Material.

14. This Agreement shall not apply to any document, testimony, or other information (whether designated confidential or otherwise) which is: (i) already properly in an opposing party's possession; or (ii) becomes generally available to the public other than as a result of disclosure in violation of this Agreement; or (iii) becomes properly available to an opposing party other than through formal discovery in this action. Nothing in this Agreement shall restrict the use or disclosure by a party of information that it alone has designated as Confidential Material.

| | |
|---|---|
| ERIC E. BEASLEY, | ARAMARK UNIFORM AND CAREER APPAREL, INC. AND JAY HESS, JR., |
| By his attorney, | By their attorneys, |
| *[signature]* | *[signature]* |
| Kevin B. Callanan (BBO# 070620) | Timothy P. Van Dyck (BBO# 548347) |
| 17 Accord Park Drive | Brian H. Lamkin (BBO# 635688) |
| Suite 101 | EDWARDS & ANGELL, LLP |
| Norwell, MA 02061 | 101 Federal Street |
| (781) 878-1604 | Boston, MA 02110 |
| (781) 878-3154 (FAX) | (617) 439-4444 |
| | (617) 439-4170 (FAX) |

BOS_BOS_502483_1/BLAMKIN