United States District Court
District of Massachusetts

|   |   |
|---|---|
| ERIC BEASLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 05-10496-NMG |
| ARAMARK UNIFORM AND ) | |
| CAREER APPAREL, INC. and ) | |
| JAY HESS, JR. ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM & ORDER

GORTON, J.

Plaintiff, Eric Beasley ("Beasley"), an African-American male, alleges that defendants, ARAMARK Uniform and Career Apparel, Inc. ("ARAMARK") and Jay Hess, Jr. ("Hess"), are liable for discriminating against him in violation of Mass. Gen. Laws ch. 151B, § 4 (hereinafter, "Chapter 151B").[1] Currently pending before the Court is a motion of defendants for summary judgment with respect to which the Court heard oral argument on April 18, 2006.

---

[1] Specifically, the complaint alleges that ARAMARK is liable under § 4(1) (unlawful for employer to discriminate on the basis of race) and that Hess is liable under §§ 4(4A) (person may not "coerce, intimidate, threaten, or interfere with" another's exercise or enjoyment of rights protected by Chapter 151B) and 4(5) (aiding and abetting).

## I. Background

Disputed facts are recited in favor of the plaintiff. Beasley was an at-will employee of the WearGuard Division of ARAMARK, working as a machine operator and digitizer in its Norwell, Massachusetts facility from March, 1999, to November, 2003. Owing to concerns about illegal drug use and workplace theft, ARAMARK commenced a two-month investigation at its Norwell facility in the Fall of 2003, which included use of an undercover operative who posed as a member of the cleaning crew.

ARAMARK asserts that it first suspected Beasley of workplace drug activity in the Spring of 2003 and that its subsequent investigation confirmed those suspicions. The reports of the undercover operative are inconclusive. Although they document suspicious conduct by an ARAMARK employee named "Eric", there are clear indications that at least some of the activity of "Eric" is attributable not to the plaintiff, Beasley, but to a coworker named Eric O'Connor ("O'Connor"). O'Connor, who is still employed by ARAMARK, is an African-American clearly distinguishable from Beasley by virtue of his smaller stature and a ring he wears near his eye.

On November 5, 2003, a sting operation was conducted to apprehend employees involved in workplace theft. Beasley was not implicated in that activity but was summoned that evening to meet with Hess, ARAMARK's Manager of Corporate Security. Hess accused

Beasley of being associated with drug activity at work. When Beasley disavowed any involvement, Hess replied, "Oh, come on, I know your kind loves to sell drugs" and recommended that Beasley resign "before we get you, because we will get you". Hess also told Beasley that his car was surrounded at that moment by drug-sniffing dogs (despite the fact that plaintiff had not driven his car to work that day).

That evening, Hess met with members of the Norwell police department to discuss the theft sting. An ARAMARK employee who had been arrested after the sting and who was present at the police station, Carlos Ortiz ("Ortiz"), told Hess that he wished to cooperate with the investigation. Ortiz informed Hess that he had purchased marijuana from Beasley several times and wrote a statement to that effect. Either that night or on the following day, Hess met with John Cummings ("Cummings"), the head of security at the Norwell facility, and discussed with him the statement of Ortiz and his meeting with Beasley.

On the next day, Beasley met with Cummings and Kathy Gillis, a Manager of Human Resources ("Gillis"), who asked him what he knew about drug use at work or theft of company property. When Beasley denied any knowledge, Gillis responded that she didn't believe him, suspended his employment indefinitely without pay and informed him that he "probably [would not] be back".

Between November 10 and November 17, 2003, a private

investigator hired by ARAMARK, Richard Sjoberg ("Sjoberg"), interviewed approximately 15 employees including most of those who had been arrested and/or suspended as a result of the drug and theft investigation. Beasley agreed to be interviewed only in the presence of his attorney and at his interview he denied any possession or use of drugs. In contrast, however, three of Beasley's coworkers reported direct knowledge of plaintiff's drug activity to Sjoberg and other coworkers proffered circumstantial evidence of Beasley's involvement in drug use and theft (e.g., rumors of such activities and inferences of drug use owing to plaintiff's red, glassy eyes and heavy use of cologne after disappearing for periods of time). Two coworkers reported no knowledge of Beasley's drug activity. One of those coworkers was Ortiz who, despite having implicated Beasley in writing just days before, recanted his prior statement, asserting that he had lied about Beasley in order to "get bailed".

On November 17, 2003, Beasley was notified by phone that his employment had been terminated for failure to abide by company policy. When he asked what policy he had failed to comply with, the caller said that she could not tell him. In total, 11 ARAMARK employees were discharged from the Norwell facility after the internal investigation, of which six were Caucasian, three

Hispanic, and two, including plaintiff, African-American.[2] ARAMARK asserts that it has not replaced Beasley with another employee since his termination.

## II. Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate where the moving party has shown, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving

---

[2] Although it does not appear to support his discrimination claim, plaintiff contends that he was the only African-American fired at that time.

party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-movant's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

Although issues of motive and intent are critical elements of employment discrimination cases, a defendant may be entitled to summary judgment where the plaintiff's case is based upon "conclusory allegations, improbable inferences, and unsupported speculation", Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted), or where he has otherwise failed to demonstrate specific facts leading to a rational inference that the defendant's proffered reason for its employment decision "was not only a sham, but a sham intended to cover up the employer's real motive: [race] discrimination", id. at 9 (citations omitted).

B. **Analysis**

1. **Claim against ARAMARK**

In evaluating claims brought under Chapter 151B, the Massachusetts Supreme Judicial Court has adopted the burden-shifting paradigm established by the United States Supreme Court for use in discrimination cases brought under Title VII. See Abramanian v. President & Fellows of Harvard Coll., 731 N.E.2d

-6-

1075, 1084 (Mass. 2000) (citations omitted). Within that framework, the plaintiff bears an initial burden of establishing a presumption of discrimination by showing that

> (1) he belonged to a protected class, a racial minority; (2) he was performing his job at a level that rules out the possibility he was fired for job performance; (3) he suffered an adverse job action by his employer; and (4) his employer sought a replacement for him with roughly equivalent qualifications.

Benoit v. Technical Mfg. Co., 331 F.3d 166, 173 (1st Cir. 2003) (citations omitted).

Once the plaintiff satisfies his prima facie burden, which is "not an onerous one", id. (citation omitted), the burden shifts to the defendant employer to articulate "a legitimate, non-discriminatory reason for its adverse employment action", id. (quoting Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001)). The employer's burden is one of production only and it need not persuade the factfinder that the reason underlying its action was sound or prudent. See Matthews v. Ocean Spray Cranberries, Inc., 686 N.E.2d 1303, 1309 (Mass. 1997) (citations omitted).

By providing a nondiscriminatory reason for its action, the employer nullifies the presumption of discrimination created by the plaintiff's prima facie case. See Abramanian, 731 N.E.2d at 1084 (citation omitted). The plaintiff then bears the ultimate burden of showing that his employer's decision was unlawful discrimination. Id. at 1085 (citation omitted). Courts

evaluating discrimination claims on summary judgment look to the totality of the plaintiff's proof in determining whether discrimination has occurred. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991). Summary judgment is inappropriate where there is evidence that the employer's reason for its employment decision was a pretext or that it was motivated by discriminatory intent. See Abramian, 731 N.E.2d at 1085-86. Cf. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

Here, defendants assert that Beasley has not demonstrated even a prima facie case of discrimination because ARAMARK did not replace him with another employee. Assuming for the sake of argument, however, that Beasley has met his prima facie burden, defendants contend that his termination was justified by the evidence of his drug-related activity against which plaintiff cannot prove racial animus. Beasley disputes the contentions of defendants, maintaining that 1) ARAMARK's weak basis for his termination implies pretext and 2) the racial statements of Hess, in combination with Beasley's suspension and termination shortly thereafter, imply that his dismissal was motivated by racial discrimination.

Beasley proffers the following facts in support of his

opposition to defendants' motion for summary judgment: 1) the statements of Hess and Gillis preceding his suspension, 2) a racial slur made to him by a supervisor in 1999 (followed by a near-immediate apology and the supervisor's resignation shortly thereafter), 3) Beasley's disavowals to ARAMARK personnel and an independent investigator of any drug activity, 4) defendants' knowledge, prior to terminating Beasley, that the incriminating statement of Beasley's coworker, Ortiz, had been retracted and 5) evidence suggesting that activity of an ARAMARK employee named Eric O'Connor was erroneously attributed to Beasley.

Plaintiff does not dispute evidence that several ARAMARK employees asserted direct knowledge of his drug-related activity, that other employees provided circumstantial evidence of his drug use and that the undercover operative expressly referred to Beasley in the summation of her reports.  He has provided no evidence, moreover, that he was treated differently from similarly situated employees or that there was a pattern of racial discrimination at ARAMARK.

Considering the totality of plaintiff's evidence in this case, the Court is persuaded that Beasley cannot prove racial discrimination by ARAMARK.  Although Beasley pokes a few holes in ARAMARK's justification for his termination, the undisputed facts document sufficient, legitimate reasons for that termination. Consequently, Beasley cannot prove that ARAMARK's reason for

terminating him was a pretext. <u>Cf. Ronda-Perez</u> v. <u>Banco Bilbao Vizcaya Argentaria-Puerto Rico</u>, 404 F.3d 42, 45 (1st Cir. 2005) (approvingly citing the Seventh Circuit's explication of "pretext for discrimination" as "more than an unusual act ... something worse than a business error ... deceit used to cover one's tracks") (quoting <u>Kulumani</u> v. <u>Blue Cross Blue Shield Ass'n</u>, 224 F.3d 681, 684 (7th Cir. 2000)) (internal quotation marks omitted).

Furthermore, plaintiff has provided scant evidence of discriminatory intent. As he conceded at the hearing before the Court on April 18, 2006, the heart of plaintiff's case is the alleged statement made by Hess in combination with Beasley's subsequent suspension and termination. That correlation of events, without more, is insufficient to present a jury question on racial discrimination. <u>Cf. Medina-Munoz</u>, 896 F.2d at 10 (where evidence of pretext is weak and there is a dearth of additional evidence implying discriminatory intent, such as statistical evidence, discriminatory policies or patterns of disparate treatment, defendant is entitled to summary judgment).

### 2. **Claims against Hess**

Defendant Hess is also entitled to summary judgment with respect to his alleged personal liability under Chapter 151B, §§ 4(4A) and 4(5). First, Hess may not be found liable for aiding and abetting discrimination by ARAMARK (the § 4(5) claim)

where the Court has concluded that ARAMARK is entitled to summary judgment.

Outside of the context of retaliation claims, Massachusetts courts have infrequently addressed individual liability under Chapter 151B. In the absence of direct evidence of discrimination, the Massachusetts Commission Against Discrimination permits claims based upon circumstantial evidence to persist where

    a.   [the alleged perpetrator] had the authority or the duty to act on behalf of the employer;

    b.   [that individual's] action or failure to act implicated rights under the statute; and

    c.   there is evidence articulated by the complainant that the action or failure to act was in deliberate disregard of the complainant's rights allowing the inference to be drawn that there was intent to discriminate or interfere with complainant's exercise of rights.

Woodason v. Norton Sch. Comm., 25 MDLR 62, 64 (2003).

In this case, Beasley cannot sustain a claim against Hess under § 4(4A) even if he proves that Hess made racially motivated statements during their meeting. There is no evidence that Hess had any authority or duty to make decisions relating to Beasley's employment. Although Hess clearly spoke with ARAMARK personnel about Beasley, there is no evidence that he misreported Beasley's involvement with drugs. Thus, the brief meeting between plaintiff and Hess, coupled with the fact of Beasley's subsequent termination, is simply too attenuated as a matter of law to

sustain a verdict against Hess for deliberately "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing] with" plaintiff's right to be free from discrimination. Bearing the same shortcomings as plaintiff's claims against Aramark, the mere temporal correlation between Hess's alleged slur and Beasley's subsequent termination does not provide evidence of causation sufficient for a rational factfinder to determine that Hess is liable.

## ORDER

In accordance with the foregoing, Defendants' Motion for Summary Judgment (Docket No. 19) is **ALLOWED**.

**So ordered.**

_/s/ Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated: April 26, 2006